J.B.S. ENTERPRISES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
J.B.S. Enterprises, Inc. v. Commissioner
Docket No. 29624-89
United States Tax Court
T.C. Memo 1991-254; 1991 Tax Ct. Memo LEXIS 297; 61 T.C.M. (CCH) 2829; T.C.M. (RIA) 91254; June 5, 1991, Filed *297 Decision will be entered for the respondent. Rick K. Disney, for the petitioner. Steve Brower, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income tax for its fiscal year ending April 30, 1986, in the amount of $ 13,148.28, and for its fiscal year ending April 30, 1987, in the amount of $ 12,506.40. The issue for decision is whether payments made to Mary Schusler by petitioner, and payroll taxes paid on account of Mary Schusler, are nondeductible by petitioner as business expenses under section 162[1] because Mary Schusler performed no services for petitioner. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated herein. *298 Petitioner was a Texas corporation with its principal place of business in Fort Worth, Texas, when its amended petition was filed. Petitioner owned three bars and restaurants in Fort Worth during the years at issue. Among the three bars was the Blues Bar, which opened for business during 1982. James B. Schusler, Mary Schusler's ex-husband, is petitioner's president and sole shareholder. James B. Schusler (James) and Mary Schusler (Mary) were separated during the years at issue. During this period Mary had only two sources of income: part-time secretarial work at $ 5 an hour, and payments from petitioner. She had two minor children to support, as well as a child in college and a grown child. James provided no support, aside from the payments made by petitioner, for his two minor children. Mary received the payments from petitioner, at James' direction, in order to support her as James had previously done, and to support her two minor children. Without the payments Mary received from petitioner, she would have been unable to support herself and the two children. Schedule E (Compensation of Officers) of petitioner's Federal income tax returns (Form 1120) for the years at issue *299 reported that Mary devoted "0%" of her time to business. Nevertheless, the return for the fiscal year ending April 30, 1986, reported that petitioner paid Mary compensation of $ 26,600 during the year, and claimed a business expense deduction for that amount. The return showed James' salary to be $ 12,505. On the same return, petitioner claimed a business expense deduction of $ 1,983 for payroll taxes, based on the payments it made to Mary. On its Federal income tax return for the fiscal year ending April 30, 1987, petitioner reported that it paid Mary a salary of $ 35,910, and claimed a business expense deduction in that amount. The return showed James' salary to be $ 49,926. On the same return, petitioner claimed a business expense deduction of $ 2,649 in payroll taxes, based on the payments it made to Mary. Respondent conducted an examination of petitioner's income tax returns for the years at issue. On May 25, 1988, petitioner filed a protest with respondent. The protest provided, in relevant part, as follows: The examining agent contends that the deduction should be disallowed due to the form. Taxpayer agrees that the form of payment did not conform to the substance *300 of the transaction. Salary earned by James B. Schusler was incorrectly reported as salary payments to Mary P. Schusler resulting in an overpayment of FICA on the part of James B. Schusler. Taxpayer will conform all documents and forms to the substance of the transaction and taxpayer contends that the facts will entitle taxpayer to the deduction for salary earned by James B. Schusler. [Emphasis added.] The protest was submitted and signed by James as president of petitioner. In addition, as part of the protest, James signed the following certification: I certify under penalties of perjury that this protest, including any accompanying schedules and statements, has been examined by me and to the best of my knowledge and belief is true, correct, and complete. The protest was also certified by Sue Ratliff, petitioner's accountant, as follows: I certify under penalties of perjury that I prepared the above protest and to the best of my knowledge and belief the information contained herein is true. In its initial petition to this Court filed December 15, 1989, petitioner stated: Officer compensation -- The classification of payments to Mary Schusler was in error which *301 was corrected by amending all appropriate payroll tax returns. Amended payroll tax returns correctly reclassified payments to James B. Schusler. Payroll taxes -- The payroll taxes as reclassified and corrected per amended payroll tax returns is an ordinary and necessary expense and therefore is deductible. The petition was signed by James as president of petitioner. On July 2, 1990, respondent filed a motion for summary judgment. On August 13, 1990, petitioner filed a response to respondent's motion for summary judgment. As part of its response, petitioner attached the affidavit of Mary, the affidavit of James, and the affidavit of Sue Ratliff. Mary's affidavit, in relevant part, provided: During the years 1986 and 1987, I was the Vice President of J.B.S. Enterprises. During those two years, I did in fact perform services for J.B.S. Enterprise in return for my wages. I spent three months looking for a building to house what is now the Blues Bar, owned by J.B.S. Enterprises. I negotiated the purchase price and was involved in all the transactions with the bank. I personally assisted in obtaining the necessary approval and permits from the City. I was personally *302 involved in obtaining insurance on behalf of the company for the bars. Although Jim and I have been separated for a number of years, we see each other or talk on the telephone very frequently. Those conversations routinely include discussions about the business. [Emphasis added.] This sworn statement was made by Mary on August 8, 1990. James' affidavit, in relevant part, provided: Sue Ratliff, a CPA, prepared the Petition in this case. I do not recall even being made aware of this case until sometime in 1990. I do not have any training in or understanding of either taxes or tax procedures. I have had to rely exclusively upon my advisor. Sue Ratliff drafted the Petition in this case and articulated what she believed to be our legal theory of this case. I signed the petition in total reliance on her judgment and without any real understanding of the nuances or implications of her actions. I have read Patty's affidavit concerning her participation in the business of J.B.S. and I can corroborate her testimony. Although Patty and I have been living apart for a number of years, we see each other fairly often and business is almost always discussed. [Emphasis *303 added.] Sue Ratcliff's affidavit, in relevant part, provided: I am a CPA who has handled all of the tax and accounting work for J.B.S. Enterprises, Inc. James Schusler is very unsophisticated with regard to tax matters and has always relied on me. I received the Notice of Deficiency and I drafted the Petition in this case. The legal position taken in that petition was the one that I felt gave J.B.S. Enterprises, Inc., the best chance of success. James was not consulted in this decision. I was not personally involved in the businesses except for the accounting. I have no personal knowledge of the extent of Patty's involvement in the business. My dealings were always directly with James. [Emphasis added.] This sworn statement was made by Sue Ratcliff on August 10, 1990. On August 27, 1990, petitioner filed an amended petition to this Court which provided, in relevant part, as follows: The Notice of Deficiency * * * was mailed to Petitioner on September 11, 1989, and was issued by the Dallas Appeals Office. The determination of the deficiency set forth in said Notice of Deficiency is based on the following errors: (a) The Commissioner erred in his determination *304 that Petitioner was not entitled to deduct officer compensation in the amount of $ 26,600 for 1986 and $ 35,910 for 1987. (b) The Commissioner erred in his determination that Petitioner was not entitled to deduct payroll taxes in the amount of $ 1,983 for 1986 and $ 2,649 for 1987. The disallowed deductions are attributable to the amounts paid to Mary Schusler by Petitioner. Mrs. Schusler was Vice President of the Corporation and did in fact perform valuable services for the Corporation. The amounts received were reasonable in light of the services rendered and her experience and expertise. OPINION Section 162(a)(1) allows as an ordinary and necessary business expense deduction a reasonable allowance for salaries or other compensation for personal services actually rendered. Petitioner contends that the payments made to Mary during the years at issue were compensation for personal services actually rendered. Respondent contends that Mary did not perform any services for petitioner. Respondent argues further that the payments were intended to provide support for Mary and her children, and therefore, pursuant to section 162(a)(1), any payment to her, and any payroll tax paid *305 on account of such payment, are not deductible as ordinary and necessary business expenses. Whether payments are intended to be compensation for personal services is a question of fact. Paula Construction Co. v. Commissioner, 58 T.C. 1055, 1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). Petitioner bears the burden of proving the payments were compensation for services rendered, rather than a nondeductible personal expense. Rule 142(a). As a preliminary matter, we note that we attach little weight to the testimony of James, Mary, and Sue Ratcliff. Their testimony, and documents which they signed under oath, are replete with inconsistencies: (1) In her affidavit, Mary states she spent 3 months looking for a building to house the Blues Bar. She later testified she spent 5 months looking for the location. (2) In her affidavit of August 8, 1990, Mary stated that she negotiated the purchase price of the Blues Bar. At trial, Mary testified that she did not negotiate with the owners. (3) In her affidavit, Mary stated she was personally involved in obtaining insurance for the bars. However, testimony at trial proves *306 she was not involved in obtaining insurance. (4) In her affidavit, Mary stated that she saw or spoke to James very frequently. At trial, she testified she spoke to James once a month. (5) Sue Ratcliff testified that she signed James' name to the protest letter dated May 25, 1988. However, James testified that he signed the protest letter. (6) Sue Ratcliff testified that she signed James' name to the initial petition. However, in his affidavit James stated that he signed the petition. (7) In his affidavit, James stated that he does not recall being made aware of the instant case until sometime in 1990. However, James and Sue Ratcliff met with Revenue Agent Gerald Yentes in November of 1987 to discuss the case. During the conference, James told Yentes that Mary never worked for petitioner, and that the payments made to her were for support of Mary and their children. Sue Ratcliff also told Yentes that Mary never worked for petitioner. (8) Finally, Mary, James, and Sue Ratcliff all testified at trial that they had no idea how Mary's salary was determined, or who determined it. In addition, James was unsure how his salary had been determined. We are also concerned that the *307 joint Federal income tax returns (Form 1040) of James and Mary for the years at issue were not offered into evidence. Because of petitioner's failure to introduce the returns, we cannot determine whether Mary declared the payments as wages. Petitioner's failure to offer them forces us to conclude that if they had been introduced it would not have been helpful to petitioner. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner did introduce into evidence the joint return of James and Mary for 1985. The return provides that James' occupation is "restaurant owner." The return is blank were it requests Mary's occupation. On the return, James and Mary declared wages totaling $ 32,261, which, in notes written on the return, are broken down into amounts of $ 3,151, $ 20,980, and $ 8,130. Petitioner offered no evidence that any of these wages are attributable to Mary. The statements made to Gerald Yentes and the protest letter dated May 25, 1988, indicate that Mary performed no services for petitioner. The only explanation petitioner offered for the inconsistency in its current position *308 is Sue Ratcliff's testimony that she thought it would be advantageous, with respect to taxes, to initially declare that Mary performed no services. It is clear to us that petitioner's position in the instant case has been motivated throughout by tax considerations. Because of inconsistencies in testimony and sworn documents, we do not accept petitioner's recantation of its original position. We are not compelled to give credit to testimony which is indefinite, uncorroborated, conflicting, fantastic, or unrealistic. Winters v. Dallman, 238 F.2d 912 (7th Cir. 1956). While petitioner did introduce documents showing that Mary reviewed petitioner's monthly profit and loss statement, given her marital status, her dependence on petitioner for support, and comments made to Revenue Agent Gerald Yentes, we conclude her review of the statements was for her own benefit, rather than for petitioner's. Petitioner introduced no other relevant documentary evidence. We find that petitioner has failed to carry its burden of proof, and that respondent has established that the payments at issue were a personal expense intended to provide support for Mary and her children. We *309 therefore sustain respondent's determination. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩